[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DEFENDANT'S MOTION FOR MODIFICATION DATED JANUARY 22, 2002
The marriage of the parties was dissolved in the Superior Court of Mercer County, New Jersey on April 25, 2000. The judgment of the court CT Page 7022 incorporated a comprehensive separation agreement signed by the parties. The plaintiff, who now resides in Connecticut, has filed the judgment with this court pursuant to C.G.S. Section 46b-71 et seq. The defendant, who also now lives in Connecticut, has filed this motion to modify alimony and child support which was heard by the court on April 23, 2002. Both parties were represented by counsel and presented evidence in support of their positions. Both parties also filed written briefs.
At the time of the dissolution the defendant was working for Ameritas Life Insurance as a national sales manager. He had a salary of $200,000 per year plus a bonus of $100,000 per year. Paragraph 35 of the separation agreement provides: "The child support provisions of this Agreement are based upon Husband having a gross annual income in the range of $300,000 and wife having an earning capacity in the range of $60,000 per annum. The child support provisions also take into consideration the Wife's receipt of the alimony set forth above. The alimony provisions hereof are based upon the parties' lifestyle when the Husband had earnings in the range of $225,000."
Soon after the dissolution the plaintiff moved to Hartford with the parties' two children, Kathleen, born June 9, 1994, and Sean, born June 8, 1998. The defendant continued to live in Lincoln, Nebraska and was commuting to Hartford on weekends to visit the children.
In July of 2000 the defendant voluntarily left his job with Ameritas and took a new job with GE Capital at a salary of $250,000 per year plus a yearly bonus of $100,000. The defendant thought that his new job would permit him to spend most of his time at the GE office in Stamford, Connecticut. This was attractive to the defendant (in addition to the relative proximity to the children in Hartford) because he and his fiancee had purchased a $600,000 home in Stamford in June 2000. But, as it turned out, the job actually required him to spend most of his time in Richmond, Virginia. Because of this, the defendant voluntarily terminated his employment with GE Capital in November 2000 and took a new job with Lincoln National Distributors which enabled him to continue to live in Stamford with his fiancee in their new home. The salary at Lincoln National was identical to the salary at GE capital.
Unfortunately, the defendant was laid off by Lincoln National in July 2001. The defendant was paid severance of seven months of full salary plus the balance of his bonus. The defendant has approximately $95,000 in a CMA account which accumulated from bonuses and severance paid by Lincoln National in 2001 and 2002. Although the defendant has searched for comparable employment in the insurance and financial industry, he has been unable to find a job in this industry which pays at the level of his last three jobs. Although there are search firms still searching on the CT Page 7023 defendant's behalf, the defendant is no longer spending any significant time in looking for financial services jobs. He would prefer not to move from the Stamford area, and the reality is that most jobs in his industry would require the defendant to relocate.
Since January 1, 2002 the defendant has been working as a real estate agent affiliated with Round Hill Partners in Greenwich, Connecticut. He prepared for this career change in the fall of 2001 by taking the required courses and the real estate exam while continuing to search for financial services jobs. He has not yet received any income as a real estate agent. He has one sale pending and has a $2,800,000 commercial listing. He is spending virtually all of his time working on the new career. He will not reap the benefits from his hard work until he has "filled the pipeline" with commissions. But once the income begins to flow, he will be rewarded for all of his efforts in the past months. He anticipates that he will earn about $80,000 in 2002, $200,000 in 2003, and in excess of $200,000 in 2004. The defendant is a talented man who will likely exceed these goals.
The plaintiff has not been employed since the dissolution. The parties had agreed that the plaintiff should devote all of her energies to child care until the younger child starts first grade. The alimony will terminate about one year after that time. The defendant is certified as a teacher and will have her masters degree before she begins teaching. The plaintiff has been saving about $28,000 per year in anticipation of the end of her alimony and the commencement of her teaching career.
The defendant's motion to modify seeks a reduction in both child support and alimony. C.G.S. Section 46b-71 requires the court to apply the substantive law of New Jersey in modifying this judgment. Both child support and alimony may be modified under New Jersey law upon a showing of a change of circumstances. But the modification must be in accordance with the New Jersey Child Support guidelines unless specific findings are made in writing by the court. Neither party presented any evidence concerning the New Jersey guidelines. Having considered all of the evidence and the law of New Jersey as presented by the parties, the court concludes that the defendant's child support should not be modified. The defendant still has earnings from 2001 which he can use to pay his child support payments until his current business begins to produce earnings from which his payments can be made.
With respect to alimony, the court concludes that the a portion of the defendant's current monthly payment should be suspended for a period of time and accumulated as an arrearage to be paid when the defendant's earnings increase. The defendant has made a decision that he would prefer to change careers and continue to live in Stamford rather that move to CT Page 7024 another part of the country to continue to pursue his career in insurance or finance. The court does not question the reasonableness of this decision because there is every reason to believe that he will be a financial success in this new venture. The defendant will ultimately be paid for the work he has been doing since January 1, 2002. But there will be a gap of several months until payments begin. It is fair and equitable that the defendant be given some relief from a portion of the current alimony payments. These deferred payments can be made at a later time.
For these reasons the court issues the following orders:
1. The motion to modify child support is denied.
2. The defendant's current alimony payments are reduced to $2,000. The sum of $3,000 shall accumulate each month as an arrearage which the defendant is not obligated to pay until further order of the court.
3. The parties are directed to schedule a hearing to review the matter in July 2002.
Pickard, J.